[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Pribble,* Slip Opinion No. 2019-Ohio-4808.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4808

THE STATE OF OHIO, APPELLANT, *v.* PRIBBLE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Pribble,* Slip Opinion No. 2019-Ohio-4808.]

*Criminal law—Sentencing—Trial court correctly sentenced defendant convicted of illegal assembly or possession of chemicals for manufacture of methamphetamine under R.C. 2925.041(C)(1) to mandatory five-year prison term rather than under R.C. 2929.14(A)(3)(b) to one to three years in prison—Court of appeals' judgment reversed and sentence reinstated.*

(No. 2017-1758—March 6, 2019—Decided November 26, 2019.)

APPEAL from the Court of Appeals for Adams County,

No. 17CA1041, 2017-Ohio-8499.

_____

KENNEDY, J.

{¶ 1} This is a discretionary appeal from the Fourth District Court of Appeals concerning which of two sentencing statutes applies to violations of R.C.

2925.041(A)—knowingly assembling or possessing one or more chemicals that may be used to manufacture a controlled substance with the intent to manufacture a controlled substance—when the drug in question is methamphetamine and the defendant has committed certain prior offenses. R.C. 2925.041(C)(1) specifies a mandatory punishment for violations of R.C. 2925.041(A) by certain repeat offenders: "one of the prison terms prescribed for a felony of the third degree that is not less than five years." But R.C. 2929.14(A)(3)(b), a sentencing statute that applies more broadly to third-degree felonies, caps sentences at 36 months in prison for third-degree felonies not listed in R.C. 2929.14(A)(3)(a), and a violation of R.C. 2929.041(A) is not included in that list. The court of appeals held that R.C. 2925.041(C)(1) and 2929.14(A)(3)(b) are in conflict, and applying the rule of lenity—codified in R.C. 2901.04(A) ("sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused")—determined that R.C. 2929.14(A)(3)(b) and its lesser, three-year maximum penalty prevails.

{¶ 2} We agree that the two statutes conflict, but applying the rule of statutory construction codified in R.C. 1.51, we conclude that the mandatory five-year sentence prescribed by R.C. 2925.041(C)(1) is a special provision that prevails as an exception to the general statute, R.C. 2929.14(A)(3)(b). Because applying R.C. 1.51 resolves the conflict between the two statutes, it is unnecessary to invoke the rule of lenity. We therefore conclude that R.C. 2925.041(C)(1) applies to the defendant in this case and reverse the judgment of the court of appeals.

## I. THE TEXT AND HISTORY OF R.C. 2925.041 AND 2929.14(A)(3)

{¶ 3} R.C. 2925.041(A) defines the offense at issue in this case: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." Under R.C. 2925.04, "[n]o person shall knowingly cultivate

2

marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.04(A). Absent certain circumstances not at issue here, a violation of R.C. 2925.041(A) is a third-degree felony pursuant to R.C. 2925.041(C). If the drug involved is methamphetamine and the offender previously has been convicted of or pleaded guilty to a felony drug-abuse offense two or more times, R.C. 2925.041(C)(1) requires a prison sentence of at least two years. And if the offender two or more times previously has been convicted of or pleaded guilty to a felony drug-abuse offense, at least one of which involved the manufacture of methamphetamine or another controlled substance, the penalty increases to a mandatory prison term of at least five years:

> If the violation of division (A) of this section is a felony of the third degree under this division and if the chemical or chemicals assembled or possessed in violation of division (A) of this section may be used to manufacture methamphetamine, there either is a presumption for a prison term for the offense or the court shall impose a mandatory prison term on the offender, determined as follows:

> (1) Except as otherwise provided in this division, there is a presumption for a prison term for the offense. If the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, except as otherwise provided in this division, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than two years. *If the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense and if at least one of those previous convictions or guilty pleas was to a violation of division (A) of this section, a violation*

*of division (B)(6) of section 2919.22 of the Revised Code* [allowing a child to be in the vicinity of a controlled-substance-manufacturing offense under R.C. 2925.04 or 2925.041], *or a violation of division (A) of section 2925.04 of the Revised Code* [engaging in the production of a controlled substance], *the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years.*

(Emphasis added.)  R.C. 2925.041(C).

{¶ 4} R.C. 2925.041 first included a specific penalty for methamphetamine manufacturing in 2006.  *See* Am.Sub.S.B. No. 53, 151 Ohio Laws, Part I, 806, 835-836.  It prescribed "as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years" if a violator of R.C. 2925.041(A) had one prior conviction of a drug-manufacturing offense.  Former 2925.041(C)(1), 151 Ohio Laws, Part I, at 835.

{¶ 5} The other statute at issue in this case is R.C. 2929.14(A)(3), which sets forth the prison terms applicable to third-degree felony convictions.  In 2006, when R.C. 2925.041 first addressed methamphetamine manufacturing, R.C. 2929.14(A)(3) read, "For a felony of the third degree, the prison term shall be one, two, three, four, or five years."  Am.Sub.H.B. No. 473, 150 Ohio Laws, Part IV, 5707, 5731.

{¶ 6} In 2011, R.C. 2929.14(A)(3) was amended by 2011 Am.Sub.H.B. No. 86 ("H.B. 86"), which enacted substantial changes to Ohio's felony-sentencing scheme.  H.B. 86 divided R.C. 2929.14(A)(3) into subdivisions (a) and (b).  Under the amendment, R.C. 2929.14(A)(3)(a) narrows the applicability of third-degree-felony sentences longer than three years; it specifically identifies violations for which a judge may impose prison terms from 12 to 60 months.  As amended, R.C. 2929.14(A)(3)(b) limits sentences to three years for third-degree felonies to which

division (A)(3)(a) does not apply. The version of R.C. 2929.14(A)(3) that is applicable in this case read:

> (a) For a felony of the third degree that is a violation of section 2903.06, 2903.08, 2907.03, 2907.04, or 2907.05 of the Revised Code or that is a violation of section 2911.02 or 2911.12 of the Revised Code if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more violations of section 2911.01, 2911.02, 2911.11, or 2911.12 of the Revised Code, the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months.

> (b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

2014 Am.Sub.H.B. No. 234.

{¶ 7} H.B. 86 also amended R.C. 2925.041(C)(1). That amendment added a requirement for imposing the mandatory five-year sentence, restricting its application to certain third-strike offenders: the offender must have committed two prior felony drug-abuse offenses, one of which involved the manufacture of a controlled substance.

## II. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 8} In May 2016, defendant-appellee, Darian J. Tribble, was indicted in the Adams County Court of Common Pleas on one count of illegal assembly or possession of chemicals for the manufacture of a controlled substance—specifically, methamphetamine—in violation of R.C 2925.041(A), a third-degree felony. On February 3, 2017, a jury convicted Pribble of the charge.

**{¶ 9}** There is no dispute that given Pribble's prior convictions of a felony drug-manufacturing offense in 2009 and a felony drug-possession offense in 2015, he met the prior-convictions requirement that triggers sentencing pursuant to the third-strike provision in R.C. 2925.041(C)(1). The issue here is whether the mandatory five-year sentence prescribed by R.C. 2925.041(C)(1) applies to *anyone* given the limits established by R.C. 2929.14(A)(3) regarding the imposition of five-year sentences for third-degree felonies. The trial court determined that R.C. 2925.041(C)(1) prevailed over R.C. 2929.14(A)(3)(b) and sentenced Pribble to a five-year prison term. Pribble appealed the sentence.

**{¶ 10}** Citing its decision in *State v. Clark*, 4th Dist. Highland No. 14CA20, 2015-Ohio-5003, the Fourth District Court of Appeals reversed Pribble's sentence. The court held that R.C. 2929.14(A)(3)(b) conflicts with R.C. 2925.041(C)(1) and that pursuant to the rule of lenity, R.C. 2929.14(A)(3)(b), the less punitive sentencing statute, applies. We accepted the state's jurisdictional appeal. 152 Ohio St.3d 1442, 2018-Ohio-1600, 96 N.E.3d 298. The state asserts a single proposition of law:

> When a defendant is convicted of a third-degree felony charge of illegal assembly of chemicals for the manufacture of drugs pursuant to R.C. 2925.041(A), the chemicals could have been used to manufacture methamphetamine, and the defendant has two or more prior felony drug abuse convictions, at least one of which is listed in R.C. 2925.041(C)(1), the trial court is required to sentence the defendant under R.C. 2925.041(C)(1) to a mandatory prison term of "not less than five years."

6

### III. LAW AND ANALYSIS

{¶ 11} Both R.C. 2925.041(C)(1) and R.C. 2929.14(A)(3) address sentencing for third-degree felonies. R.C. 2925.041(C)(1) is clear in its requirement that two-time felony drug-abuse offenders with at least one prior conviction involving the production of methamphetamine receive five-year prison terms. Neither party argues that R.C. 2925.041(C)(1) fails to establish that legislative intent. Although R.C. 2925.041(C)(1) does not itself set forth the five-year sentence, it states that "the court shall impose as a mandatory prison term *one of the prison terms prescribed for a felony of the third degree that is not less than five years*." (Emphasis added.) A five-year prison term is indeed an available term-of-years sentence in the sentencing scheme for third-degree felonies. The question before us is whether R.C. 2929.14(A)(3)—and its limitation of the third-degree felonies for which sentences greater than three years may be imposed—somehow foils the plain legislative intent behind R.C. 2925.041(C)(1).

{¶ 12} "It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law." *State v. Moaning*, 76 Ohio St.3d 126, 128, 666 N.E.2d 1115 (1996). " 'This court in the interpretation of related and co-existing statutes must harmonize and give full application to all * * * statutes [concerning the same subject matter] unless they are irreconcilable and in hopeless conflict.' " *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994), quoting *Johnson's Mkts., Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35, 567 N.E.2d 1018 (1991); *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 45. But when statutes conflict, as R.C. 2925.041(C)(1) and 2929.14(A)(3)(b) do in this case, "we must resort to statutory interpretation and construe the statutes so as to give effect to the legislature's intent." *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 24.

### A. *Application of R.C. 1.51*

{¶ 13} "It is a well-settled principle of statutory construction that when an irreconcilable conflict exists between two statutes that address the same subject matter, one general and the other special, the special provision prevails as an exception to the general statute." *State v. Conyers*, 87 Ohio St.3d 246, 248, 719 N.E.2d 535 (1999). R.C. 1.51, the statutory version of this general/specific canon, recognizes that optimally, conflicting statutes should be construed "so that effect is given to both" but provides that "[i]f the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." The rationale behind the general/specific canon is that " 'the particular provision is established upon a nearer and more exact view of the subject than the general, of which it may be regarded as a correction.' Or think of it this way: the specific provision comes closer to addressing the very problem posed by the case at hand and is thus more deserving of credence." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012), quoting Jeremy Bentham, *General View of a Complete Code of Laws*, reprinted in 3 *The Works of Jeremy Bentham* 210 (John Bowring Ed.1843).

### 1. *R.C. 2925.041(C)(1) is the more specific statute*

{¶ 14} Here, R.C. 2925.041(C)(1) purports to address "the very problem posed by the case at hand," Scalia & Garner at 183—the methamphetamine crisis, a specific problem caused by a specific drug—and is thus more deserving of credence.[1]

---

1. A compelling moment from Pribble's trial demonstrates why the General Assembly might seek a mandatory lengthy sentence for repeat methamphetamine manufacturers. The trial judge spoke eloquently about the large number of potential jurors who could not serve on the jury in this case, because they could not be fair to Pribble given the effect that drug abuse had had on their own lives.

{¶ 15} R.C. 2925.041(C)(1) is the more specific of the two statutes. It addresses sentencing for violations involving the manufacture of a specific drug, methamphetamine, by a narrow group of offenders, two-time felony drug-abuse offenders with at least one conviction or guilty plea involving the manufacture of a controlled substance. R.C. 2929.14(A)(3), on the other hand, is a general sentencing statute for third-degree felonies.

{¶ 16} R.C. 2925.041(C)(1) is also more specific as to the sentence prescribed—five years—as opposed to the sentencing options available under R.C. 2929.14(A)(3), which run from nine months to five years. If the General Assembly had wanted the five-year sentence prescribed by R.C. 2929.14(A)(3)(a) to be available under R.C. 2925.041(C)(1), why would it not simply add R.C. 2925.041(C)(1) to the third-degree felonies listed in R.C. 2929.14(A)(3)(a) for which a five-year sentence may be imposed? Because that would defeat the purpose of instituting a mandatory five-year sentence for certain methamphetamine-production offenses—penalties for the offenses listed in R.C. 2929.14(A)(3)(a) have a range of discretionary sentences available that begin at 12 months. And unlike R.C. 2925.041(C)(1), which prescribes a mandatory five-year sentence, the statutes listed in R.C. 2929.14(A)(3)(a) at the time of Pribble's offense did not themselves specify sentencing ranges for violations; the most specific statute simply stated that "[t]he court shall impose * * * a mandatory prison term equal to one of the prison terms prescribed in section 2929.14 of the Revised Code for a felony of the third degree," 2007 Am.Sub.S.B. No. 10, former R.C. 2907.05(C)(2).

{¶ 17} Because it includes wide, discretionary sentencing ranges, R.C. 2929.14(A)(3) could not accommodate the General Assembly's intent specifically regarding punishment for third-strike methamphetamine manufacturers—namely, to withhold from trial courts the discretion to impose a sentence of less than five years on two-time felony drug-abuse offenders convicted of this particular crime.

The General Assembly reflected that specific intent by separately prescribing the penalty in a more specific statute. R.C. 2925.041(C)(1) is a clear exception to R.C. 2929.14(A)(3)(b).

 2. *The applicable portion of R.C. 2929.14(A)(3) was not enacted later in time*

{¶ 18} Still, under R.C. 1.51, when a specific and a general provision are in irreconcilable conflict, the general provision prevails if it was enacted later in time "and the manifest intent is that the general provision prevail." The general provision here, however, was not enacted later than the specific provision.

{¶ 19} As discussed above, special penalties for methamphetamine production were first instituted in 2006. However, in 2011, R.C. 2925.041(C)(1) was amended in the same bill, H.B. 86, that amended R.C. 2929.14(A)(3), the third-degree-felony-sentencing provision. H.B. 86 constrained the already limited application of R.C. 2925.041(C)(1)—before 2011, that statute also limited the number of third-degree felonies to which the mandatory five-year sentence applied—by adding the requirement that an offender have at least two prior felony drug-abuse convictions, including one conviction involving drug manufacturing. The change to R.C. 2925.041(C)(1) happened at the same time as the relevant changes to R.C. 2929.14(A)(3), and therefore, the general provision was not the later adoption. Further, there was no change to R.C. 2929.14(A)(3) from the enactment of H.B. 86 until the time of Pribble's offense.[2] Therefore, we need not address what would be the next consideration under R.C. 1.51—whether "the manifest intent is that the general provision prevail." *See, e.g.*, *State ex rel. Dublin Securities, Inc. v. Ohio Div. of Securities*, 68 Ohio St.3d 426, 431, 627 N.E.2d 993 (1994). We note, however, that even if that analysis were necessary, "[i]t has been

---

2. Effective March 21, 2017, 2016 Sub.H.B. No. 470 added assisting suicide, R.C. 3795.04, to the offenses listed in R.C. 2929.14(A)(3)(a). Effective March 22, 2019, Am.Sub.S.B. No. 201 added certain child-pornography offenses, R.C. 2907.321, 2907.322, and 2907.323, to the offenses listed in R.C. 2929.14(A)(3)(a).

a long-standing rule that courts will not hold prior legislation to be impliedly repealed by the enactment of subsequent legislation unless the subsequent legislation clearly requires that holding," *State v. Frost*, 57 Ohio St.2d 121, 124, 387 N.E.2d 235 (1979).

{¶ 20} Upon applying R.C. 1.51, R.C. 2925.041(C)(1) prevails over R.C. 2929.14(A)(3)(b). R.C. 2925.041(C)(1) provides an exception to general third-degree-felony sentencing.

### B. R.C. 1.47(C) provides an additional relevant consideration

{¶ 21} "In enacting a statute, it is presumed that * * * [a] just and reasonable result is intended." R.C. 1.47(C). Here, an incongruous result would occur if R.C. 2929.14(A)(3)(b) applied to offenders like Pribble who are eligible to be sentenced under the third-strike provision in R.C. 2925.041(C)(1). Under R.C. 2925.041(C)(1), a defendant with two prior felony drug-abuse offenses that *do not* include a previous drug-manufacturing offense faces a mandatory prison term of "not less than two years." If R.C. 2929.14(A)(3)(b) controlled the sentencing of a defendant convicted under R.C. 2925.041(A) whose two prior offenses *do* include drug manufacturing, that defendant could be sentenced to as little as nine months in prison, given the discretionary range available under that provision. Therefore, the defendant without the prior conviction for drug manufacturing could end up with a harsher sentence than the defendant who did have a previous drug-manufacturing conviction. The legislature could not have intended that result.

### C. The rule of lenity does not apply

{¶ 22} In holding that R.C. 2929.14(A)(3)(b) prevails over R.C. 2925.041(C)(1), the court of appeals relied on another rule of construction, the rule of lenity. "The rule of lenity is a principle of statutory construction that provides that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous." *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 38. The

codification of the rule in R.C. 2901.04(A) states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

{¶ 23} Are we again at odds, this time between statutes that instruct us how to construe statutes? No, because the rule of lenity is not the first place to turn when interpreting conflicting criminal statutes. The rule of lenity is properly applied when, "after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists.' " Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, at 299, quoting *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). The United States Supreme Court has also noted the limited applicability of the rule of lenity: "That rule, as we have repeatedly emphasized, applies only if, 'after considering text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.' " *Abramski v. United States*, 573 U.S. 169, 188, 134 S.Ct. 2259, 189 L.Ed.2d 262 (2014), fn. 14, quoting *Maracich v. Spears*, 570 U.S. 48, 76, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013). We agree that if other principles of construction resolve a conflict between two criminal statutes, there is no need to apply the rule of lenity. " ' "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." ' " *Elmore* at ¶ 40, quoting *Gozlon-Peretz v. United States*, 498 U.S. 395, 410, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991), quoting *Callanan v. United States*, 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961). There is no need to perpetuate the idea that there is an intractable conflict requiring application of the rule of lenity when another rule of statutory construction resolves the conflict, as R.C. 1.51 does here.

## IV. CONCLUSION

{¶ 24} The trial court followed the applicable statute, R.C. 2925.041(C)(1), in sentencing Pribble. That statute conflicts with R.C. 2929.14(A)(3)(b), but we conclude that the rule of statutory construction codified in R.C. 1.51 resolves the conflict: the mandatory five-year sentence prescribed by R.C. 2925.041(C)(1) is a special provision that prevails as an exception to the general statute, R.C. 2929.14(A)(3)(b). Because applying R.C. 1.51 resolves the conflict between the two statutes, it is unnecessary to invoke the rule of lenity. R.C. 2925.041(C)(1) applies to Pribble, and the court of appeals therefore erred in reversing his sentence. Accordingly, we reverse the court of appeals' judgment and reinstate the sentence imposed by the trial court.

Judgment reversed

and sentence reinstated.

FRENCH and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., concur in judgment only.

DEWINE, J., dissents, with an opinion.

DONNELLY, J., dissents, with an opinion.

_____

**DEWINE, J., dissenting.**

{¶ 25} We are confronted with conflicting statutory directives as to the permissible punishment for a crime. One statute says a judge must impose a prison sentence of 9 to 36 months; another statute ordains a flat five-year sentence. The lead opinion applies a tool of statutory construction to conclude that the longer sentence must be imposed. But in my view, that tool fails to provide a satisfactory answer in this case. I would turn to the rule of lenity and hold that the shorter sentencing range applies.

{¶ 26} The crime here is the assembly or possession of chemicals for use in making methamphetamine, codified in R.C. 2925.041 ("the illegal-assembly

statute"). A provision of that statute ("the illegal-assembly provision") provides that for certain third-time drug offenders, the punishment shall be "one of the prison terms prescribed for a felony of the third degree that is not less than five years." R.C. 2925.041(C)(1).

**{¶ 27}** The above language was added to the illegal-assembly statute in 2006. *See* Am.Sub.S.B. No. 53, 151 Ohio Laws, Part I, 806, 835. At the time, R.C. 2929.14—the statute that prescribes offenses for felonies ("the felony-sentencing statute")—authorized a sentence of one to five years for third-degree felonies. *See* Am.Sub.H.B. No. 473, 150 Ohio Laws, Part IV, 5707, 5731. Thus, in 2006, a five-year sentence was permissible under both statutes and there was no real dispute that the law required that sentence to be imposed.

**{¶ 28}** Some years later, the General Assembly changed tack and rewrote the felony-sentencing statute. It reduced the sentencing range for most third-degree felonies to 9 to 36 months and enumerated certain offenses eligible for a heightened sentence of 12 to 60 months. *See* R.C. 2929.14(A)(3) ("the sentence-shortening provision"); 2011 Am.Sub.H.B. No. 86 ("H.B. 86"). Illegal assembly was not among the enumerated offenses subject to the longer sentencing range. Thus, beginning in 2011, a trial court confronted with a third-time felony drug offender convicted of illegally assembling chemicals to produce methamphetamine was instructed to impose a term of 9 to 36 months under the sentence-shortening provision and to impose a term of "not less than five years" under the illegal-assembly provision.

**{¶ 29}** The lead opinion looks to R.C. 1.51 to resolve the conflict between the two statutes. That section instructs that in the event of an irreconcilable conflict, a "special" provision applies over a "general" provision, unless the general provision was adopted later in time and the General Assembly manifested an intent that the general provision prevail. The lead opinion ultimately concludes that the illegal-assembly provision is a special provision that takes precedence over the

14

general sentence-shortening provision. Thus, the lead opinion applies the five-year term set forth in the illegal-assembly provision. Lead opinion at ¶ 2.

{¶ 30} I am not convinced. As I see it, the general/special rule does not persuasively resolve the conflict between the statutes. First, as Justice Donnelly illustrates in his dissenting opinion, it is by no means clear that the lead opinion has correctly labeled these statutes as "specific" and "general." A strong argument can be made that both are specific. The illegal-assembly provision can be said to be specific in that it explicitly names the illegal-assembly offense and sets forth a minimum penalty for the offense. But the sentence-shortening provision can also be said to be specific in that it explicitly lists every third-degree felony for which a judge may impose a sentence longer than three years.

{¶ 31} If both provisions are specific, then R.C. 1.51 does not apply and, under R.C. 1.52, the more recently enacted provision prevails. The lead opinion says that both the felony-sentencing statute and the illegal-assembly statute were amended as part of the same bill and, therefore, neither can be said to be the later enactment. Lead opinion at ¶ 19. *See* 2011 Am.Sub.H.B. No. 86. The problem with this assertion is that the illegal-assembly provision was not among the provisions of the illegal-assembly statute amended in 2011. . We are told that "[a] statute which is reenacted or amended is intended to be a continuation of the prior statute and not a new enactment, so far as it is the same as the prior statute." R.C. 1.54. The "key language" in the illegal-assembly statute—that imposing "one of the prison terms prescribed for a felony of the third degree that is not less than five years," R.C. 2925.041(C)(1)—was untouched by the amendments enacted as part of H.B. 86. *See In re Petition to Annex 320 Acres to the Village of S. Lebanon*, 64 Ohio St.3d 585, 595, 597 N.E.2d 463 (1992). That provision therefore dates back to the time of its original enactment in 2006. Conversely, the pertinent provision in the felony-sentencing statute—the sentence-shortening provision—*was* substantively amended by H.B. 86 in 2011. Thus, it seems only fair to view the

sentence-shortening provision as the later adoption. If both provisions are considered to be specific, then the later-enacted sentence-shortening provision applies. *See* R.C. 1.51; R.C. 1.52.

{¶ 32} But even if we accept the lead opinion's characterizations of the illegal-assembly provision as specific and the sentence-shortening provision as general, we must still grapple with the manifest-intent portion of R.C. 1.51. If the general provision is the later adoption, R.C. 1.51 requires us to examine whether the General Assembly revealed a manifest intent that the general provision prevail. The lead opinion does not reach this issue, but there is some evidence of such an intent. H.B. 86—the bill creating the new felony-three sentencing range—states that it was enacted in part "to revise some of the penalties * * * for all third degree felony drug offenses that currently have mandatory prison terms" and "to change the sentencing structure * * * for felonies of the third degree that are not specified types of offenses." That statement of intent directly addresses enactments such as the illegal-assembly provision. . Thus, I am not persuaded that R.C. 1.51 supports the result reached by the lead opinion.

{¶ 33} There is an additional problem with the lead opinion's logic. Even if we accept its questionable conclusions that (1) the illegal-assembly provision is specific and the sentence-shortening provision general and (2) the sentence-shortening provision is not the later enactment, the lead opinion still fails to account for the ambiguity within the text of the illegal-assembly provision itself. By its terms, the illegal-assembly provision requires both that the trial court impose "one of the prison terms prescribed for a felony of the third degree" and that the court impose a prison term of "not less than five years." R.C. 2925.041(C)(1). This directive made sense under the prior version of the felony-sentencing statute when all third-degree felonies were subject to a maximum five-year prison term. Under the current version, however, different third-degree felonies are subject to different sentencing ranges, and a five-year sentence is no longer prescribed for the third-

degree felony offense of illegal assembly. Thus, for a court to follow the statute's directive and impose one of the penalties "prescribed for a felony of the third degree that is not less than five years," it would need to impose a penalty "prescribed" for a different felony of the third degree—that is, it would need to impose a penalty that was specifically not prescribed for the illegal-assembly offense.

{¶ 34} All of this is a long way of saying that the rule of statutory construction relied on by the lead opinion doesn't convincingly answer the question in front of us. Nor do any of our other ordinary tools of statutory construction. In such a situation, the legislature has instructed that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A). This statutory provision is a codification of the rule of lenity, the idea that "ambiguous criminal laws [are] to be interpreted in favor of the defendants subjected to them," *United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) (Scalia, J.). There are good reasons for such a rule:

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

*Id.*

{¶ 35} It is true that we employ traditional methods of textual interpretation to determine at the outset whether the provision at issue is truly ambiguous; the rule of lenity "operates only at the end of the process of construction." (Cleaned up.) *United States v. R.L.C.*, 503 U.S. 291, 311, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992)

(Thomas, J., concurring in part and concurring in judgment). But when those methods fail to yield a satisfactory construction, the rule of lenity instructs that we must choose the construction that favors the criminal defendant.

{¶ 36} That is precisely the situation here. Our well-established methods of statutory construction do not convincingly resolve the conflict between the statutes, nor do they clarify the ambiguous language regarding punishment within the illegal-assembly provision. The rule of lenity compels us to opt for the shorter sentencing range. Because the lead opinion concludes otherwise, I respectfully dissent.

———————————————

**DONNELLY, J., dissenting.**

{¶ 37} I dissent. The Fourth District Court of Appeals got it exactly right when it held that the General Assembly created an irreconcilable conflict between R.C. 2929.14(A)(3) and 2925.041(C)(1), and frustrating as it may be, courts are obligated to strictly construe those statutes against the state until the General Assembly reconciles their discordant language. The conflict between the statutes cannot be resolved as the majority has decided without contorting the nature of the conflict, the text of the statutes themselves, and the role of strict construction in the process. The correct outcome here is to affirm the judgment of the court of appeals.

## I. Introduction

{¶ 38} Before I enter into the jumble of numbers and letters that inevitably piles up when picking apart statutory provisions, I want to frame this conflict in plain English. This matter does not actually involve a clean conflict; it does not involve two statutes that independently prescribe conflicting sentences. The two statutory provisions at issue in this case are interrelated. One statute used to prescribe a range of prison sentences. The other statute incorporated that sentencing range but added an extra requirement. Subsequently, the sentencing-

range statute changed in a way that made it impossible to satisfy the extra requirement.

{¶ 39} One solution to this problem would be to pretend that the extra-requirement statute is actually a stand-alone sentencing provision that no longer incorporates the sentencing-range statute (despite the fact that the extra-requirement statute still says that it incorporates the sentencing-range statute) and that the specific nature of the extra requirement indicates that the General Assembly meant for it to be a stand-alone exception to the sentencing-range statute. Another solution would be to modify the extra requirement so that it can remain at least partially effective in light of the sentencing-range statute that the extra-requirement statute expressly incorporates.

{¶ 40} The lead opinion concludes that the former solution is the only possible choice when considering the canon of statutory construction that favors a specific over a general provision. I would hold that the latter solution is the better choice, even when using the lead opinion's chosen analytical tools. I would also hold that the appropriate analytical tool for this conflict in penal statutory language is the rule of strict construction, also called the rule of lenity. And under the rule of lenity, the latter solution is all but required.

## II. A proper understanding of the statutes involved

{¶ 41} The allegedly general statute in this conflict is R.C. 2929.14(A)(3) ("F3 statute"), which prescribes a range of prison sentences for third-degree felonies. It is divided into one general and one specific provision. For most third-degree felonies, it prescribes prison terms of "nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." R.C. 2929.14(A)(3)(b) ("general F3 provision"). For a special subset of enumerated third-degree felony offenses, it prescribes prison terms of "twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months." R.C. 2929.14(A)(3)(a) ("specific F3 provision").

{¶ 42} The allegedly specific statute in this conflict is a provision within R.C. 2925.041, which governs the offense of illegal assembly or possession of chemicals for the manufacture of drugs. The specific provision at issue provides that for certain third-strike offenders who have violated the statute, "the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years." R.C. 2925.041(C)(1) ("third-strike provision").

{¶ 43} The plain language of the foregoing statutes, as well as their interrelationship, reveal that the F3 statute is not necessarily a general statute, the third-strike provision is not an independent specific statute, the third-strike provision conflicts with both the general and specific F3 provisions, and the true conflict lies within the third-strike provision itself. .

## A. R.C. 2929.14(A)(3) is no longer just a general statute

{¶ 44} When the third-strike provision was added to R.C. 2925.041 in 2006, the version of the F3 statute that was in effect could fairly be characterized as a general statute, with nothing in particular to prevent the judiciary from inferring special exceptions in other statutes that address specific offenses. At that time, it stated: "For a felony of the third degree, the prison term shall be one, two, three, four, or five years." Former R.C. 2929.14(A)(3), Am.Sub.H.B. No. 473, 150 Ohio Laws, Part IV, 5707, 5731.

{¶ 45} But in 2011, the General Assembly revamped the F3 statute to prescribe a range of definite sentences from 9 to 36 months for most third-degree felony offenses in the general F3 provision, R.C. 2929.14(A)(3)(b). 2011 Am.Sub.H.B. No. 86 ("H.B. 86"). The General Assembly also created an exception for certain specified felonies, prescribing a range of 12 to 60 months in the specific F3 provision, R.C. 2929.14(A)(3)(a).

{¶ 46} The specific F3 provision, R.C. 2929.14(A)(3)(a), lists many offenses for which a sentence of up to five years may be imposed, including

vehicular homicide (R.C. 2903.06), aggravated vehicular assault (R.C. 2903.08), sexual battery (R.C. 2907.03), unlawful sexual conduct with a minor (R.C. 2907.04), gross sexual imposition (R.C. 2907.05), and certain types of robbery and burglary offenses (R.C. 2911.02 and 2911.12). It is quite a variety. But it is not a variety wide enough to characterize R.C. 2929.14(A)(3)(a) either as a general statute, or as anything other than a specific exception to the general F3 provision, R.C. 2929.14(A)(3)(b), for particular offenses deemed by the General Assembly to be more severe in nature than most third-degree felonies.

{¶ 47} To remove any suspicion that the specific F3 provision could somehow be generally applied to other unenumerated offenses by judicial inference alone, the F3 statute further specifies that the general F3 provision—and not the specific F3 provision—must apply to any "felony of the third degree *that is not an offense for which division (A)(3)(a) of this section applies*." (Emphasis added.) R.C. 2929.14(A)(3)(b).

{¶ 48} The F3 statute is no longer the general statute that it was in 2006. It is now bifurcated into two separate provisions. Even assuming that R.C. 2929.14(A)(3)(b) is a general statutory provision, R.C. 2929.14(A)(3)(a) remains a specific provision of limited application.

### B. R.C. 2925.041(C)(1) is not an independent variable

{¶ 49} The third-strike provision in R.C. 2925.041(C)(1) is not a stand-alone sentencing provision. Rather than prescribing a definite sentence or range for repeat offenders, the third-strike provision states that "one of the prison terms prescribed for a felony of the third degree" applies. R.C. 2925.041(C)(1). In other words, the third-strike provision does not prescribe the prison terms involved; the F3 statute does.

{¶ 50} What makes the third-strike provision an allegedly specific statute is that it narrows the sentencing range prescribed in the F3 statute by raising the floor of that range to "not less than five years," R.C. 2925.041(C)(1). It is not a full

exception: it does not purport to alter the ceiling of the range provided in the F3 statute, and it does not provide its own sentence or range of sentences independent of the F3 statute.

{¶ 51} Without using a sentencing range prescribed by the F3 statute, the third-strike provision in R.C. 2925.041(C)(1) would have no independent force; it would impose a five-year minimum on nothing.

### C. The five-year minimum in R.C. 2925.041(C)(1) conflicts with both the specific and the general sentencing provisions in R.C. 2929.14(A)(3)

{¶ 52} There was no conflict between the third-strike provision of R.C. 2925.041(C)(1) and the F3 statute, R.C. 2929.14(A)(3), in 2006. The five-year minimum in the third-strike provision made some sense when it was enacted in 2006, because the F3 statute provided a general range of one to five years for all third-degree felonies at the time. I stress that it made only *some* sense. This is because the practical result of combining a five-year minimum in the third-strike provision with a five-year maximum in the F3 statute in 2006 was the requirement of a sentence of exactly five years, with no discretion left to the sentencing court.

{¶ 53} Why the General Assembly decided to add the aura of judicial discretion to the third-strike provision when none existed is unclear. What matters, though, is that the General Assembly did *not* choose to simply state in the third-strike provision of R.C. 2925.041(C)(1) that a mandatory five-year sentence—no more and no less—applied; it chose to make the third-strike provision dependent upon the range permitted in the F3 statute.[3]

---

3. It is at this point that the justices joining the lead opinion most deviate from the text of the statutes to achieve their desired result. The lead opinion characterizes R.C. 2925.041(C)(1) as imposing a singular, independent "mandatory five-year sentence," lead opinion at ¶ 16, despite the fact that the actual text provides only a minimum and is entirely dependent upon the sentences prescribed in R.C. 2929.14(A)(3). The lead opinion also claims that the "purpose" behind R.C. 2925.041 is inconsistent with linking division (C)(1) to an entire range of sentences in R.C. 2929.14(A)(3), lead opinion at ¶ 16, despite the fact that the text of R.C. 2925.041(C)(1) expressly creates that exact link.

{¶ 54} In 2011, the five-year floor in the third-strike provision ceased to make any sense at all. The five-year minimum is not allowed by the general F3 provision, R.C. 2929.14(A)(3)(b), because the new general range allows sentences of up to only three years. And the five-year minimum is not allowed by the specific F3 provision, R.C. 2929.14(A)(3)(a), because the plain language of that provision prohibits the application of its 12-to-60-month sentencing range to offenses that are not listed. As noted above, the offenses listed in the specific F3 provision are diverse. But they do not include the offense defined in R.C. 2925.041, nor do they include any offenses that are similar to that offense.

{¶ 55} This court has already held that if an offense is not listed in the specific F3 provision, R.C. 2929.14(A)(3)(a), then the 9-to-36-month range in the general F3 provision—and not the five-year range in the specific F3 provision— applies. *State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 18. In *South*, the court considered a sentencing provision, R.C. 2929.14(B)(4), prescribing a discretionary sentencing range of " 'any duration specified' " in the F3 statute for certain offenses for operating a vehicle while under the influence of alcohol or drugs ("OVI"). *South* at ¶ 18. Similarly to this case, the reference in R.C. 2929.14(B)(4) to the F3 statute signified a potential sentence of "one, two, three, four, or five years" prior to 2011, former R.C. 2929.14(A)(3), Am.Sub.H.B. No. 473, 150 Ohio Laws, Part IV, at 5731, but when the F3 statute was amended in H.B. 86, the meaning of the reference changed.

{¶ 56} There was no statutory conflict for this court to resolve in *South*, because the language of R.C. 2929.14(B)(4) was flexible and still had meaning, albeit a different meaning, after H.B. 86 became effective in 2011. *See South* at ¶ 7. The court was able to harmonize the language in the specific OVI-sentencing provision with the general sentencing range in R.C. 2929.14(A)(3)(b), leaving no reason to further discuss the significance of the 12-to-60-month sentencing range in the specific F3 provision, R.C. 2929.14(A)(3)(a).

{¶ 57} Unlike the language of R.C. 2929.14(B)(4) at issue in *South*, the language of the third-strike provision of R.C. 2925.041(C)(1) is not flexible and cannot be harmonized with the general F3 provision, R.C. 2929.14(A)(3)(b). Also unlike in *South*, our consideration of the statutory language here does not stop at the general F3 provision. We must also consider the exception provided in the specific F3 provision, R.C. 2929.14(A)(3)(a). The additional consideration is significant to how we must resolve the conflict between the third-strike provision and the F3 statute. The majority cannot conclude merely that the third-strike provision is intended to be an exception to the general F3 provision, R.C. 2929.14(A)(3)(b); it would also have to determine that the third-strike provision is intended to be an exception to the exclusive nature of the exception created by the specific F3 provision, R.C. 2929.14(A)(3)(a).

### III. The applicable tools of interpretation

{¶ 58} Given the context provided above regarding the nature of the statutes and the conflict, I disagree with the lead opinion's conclusion that "the mandatory five-year sentence prescribed by R.C. 2925.041(C)(1) is a special provision that prevails as an exception to the general statute, R.C. 2929.14(A)(3)(b)," lead opinion at ¶ 24. Instead, the third-strike provision of R.C. 2925.041(C)(1) does not independently prescribe a five-year sentence, the analysis does not stop at the general F3 provision, R.C. 2929.14(A)(3)(b), and the appropriate canons of statutory interpretation must be applied to the conflict between the third-strike provision and the specific F3 provision, R.C. 2929.14(A)(3)(a).

### A. The general/specific canon and R.C. 1.51

{¶ 59} The lead opinion primarily relies on the general/specific canon of interpretation articulated in R.C. 1.51 and Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). In the event of an irreconcilable conflict between statutory provisions, the canon instructs that "the special or local provision prevails as an exception to the general provision, unless the general provision is the

later adoption and the manifest intent is that the general provision prevail." R.C. 1.51. With a proper understanding of the statutes involved, it is doubtful that the general/specific canon is particularly relevant to the conflict. But even if we consider it to be the most relevant rule, the application of this rule renders a result different from the one reached by the lead opinion.

### 1. R.C. 2925.041(C)(1) is not the more specific statute

{¶ 60} As explained above, the third-strike provision in R.C. 2925.041(C)(1) is not a stand-alone sentencing provision. Thus, it is not quite accurate to characterize the third-strike provision as a specific statute that can apply instead of the F3 statute. Even assuming that it is proper to call the third-strike provision a specific statute in this context, it is not more specific than provisions within the F3 statute.

{¶ 61} R.C. 2925.041(C) addresses the punishments that may be applicable to the specific offense of illegal assembly or possession of chemicals for the manufacture of methamphetamine. It is certainly more specific than R.C. 2929.14(A)(3)(b), which prescribes sentences for third-degree felony offenses in general. But the specific F3 provision, R.C. 2929.14(A)(3)(a), enumerates specific offenses that are considered to be more severe in nature than most third-degree felonies and allows a special range of more severe punishments to apply to those enumerated offenses.

{¶ 62} The specific F3 provision, R.C. 2929.14(A)(3)(a), is, at the very least, on equal footing with the third-strike provision in R.C. 2925.014(C)(1) in terms of specificity. The exclusivity of the enumerated list of offenses in the specific F3 provision, as well as the instruction in R.C. 2929.14(A)(3)(b) that the 12-to-60-month sentencing range is unavailable for any "felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies," prohibits the inference that the third-strike provision is an exception to division (A)(3)(a) or

(A)(3)(b). Accordingly, the third-strike provision cannot prevail as the more specific statute.

*2. The sentencing ranges of both the specific and the general provisions of R.C. 2929.14(A)(3) were enacted later in time*

{¶ 63} The offense of illegal assembly or possession of chemicals for the manufacture of drugs, R.C. 2925.041, was first established in 2001. Sub.H.B. No. 7, 149 Ohio Laws, Part II, 4000, 4012-4013. Originally, any violation of R.C. 2925.041 was a third-degree felony. *Id*. In 2004, the legislature added a felony-level enhancement to R.C. 2925.041(C): the offense remained a third-degree felony but was raised to a second-degree felony for violations committed near a juvenile or a school. Am.Sub.S.B. No. 58, 150 Ohio Laws, Part V, 7494, 7504-7505.

{¶ 64} In 2006, the General Assembly added sanction-level enhancements for violations involving methamphetamines by requiring certain sentencing minimums: under R.C. 2925.041(C)(1) for third-degree felony offenses and under division (C)(2) for second-degree felony offenses. Am.Sub.S.B. No. 53, 151 Ohio Laws, Part I, 806, 834-836. Each subdivision had two enhancement steps: the first step applied to any violation involving methamphetamine manufacturing and the second step applied if the offender also had a prior conviction for certain drug offenses—specifically, drug manufacturing or drug-related child endangerment. The sentencing minimums for the first and second steps were two and five years for third-degree felonies and three and five years for second-degree felonies.

{¶ 65} In 2011, the General Assembly changed the aggravating circumstances that qualified for the enhancement steps in R.C. 2925.041(C)(1). 2011 Am.Sub.H.B. No. 86. Now, the first step for third-degree-felony violations applies if the offender has two or more prior convictions for any felony drug offense, and the second step applies if at least one of those convictions was for drug manufacturing or drug-related child endangerment. But the sentencing structure for the steps remained the same; the sentencing minimums for the first and second

steps are still two and five years for third-degree felonies, and they are still three and five years for second-degree felonies.

{¶ 66} Meanwhile, for decades, R.C. 2929.14(A)(3), the F3 statute, had provided the same sentencing structure for third-degree felony offenses: a simple range of one to five years. *See* Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7464. But in 2011, the General Assembly completely overhauled the sentencing structure for third-degree felonies in the F3 statute, creating the bifurcated special and general sentencing ranges described above.

{¶ 67} The statutory conflict here is not related to the nature of an offender's violation of R.C. 2925.041 or what the offender has done to qualify for certain felony or sanction enhancements within R.C. 2925.041. The conflict arises from the structure of the sanctions imposed on those felony-enhancement or sanction-enhancement steps. Although some aspects of R.C. 2929.041 have changed, the actual sentencing structure and minimum terms for the enhancement steps in R.C. 2929.041(C) have remained the same since 2006. *See* R.C. 1.54 ("A statute which is reenacted or amended is intended to be a continuation of the prior statute and not a new enactment, so far as it is the same as the prior statute"). The significant changes to the sentencing structure of the F3 statute were enacted later in time.

*3. The result of employing the general/specific canon*

{¶ 68} Because R.C. 2929.14(A)(3)(a) is a specific statute and prohibits the inference that the third-strike provision is an exception to division (A)(3)(a) or (A)(3)(b), the third-strike provision of R.C. 2925.041(C)(1) cannot prevail as the more specific statute. Because the prison-term ranges in the F3 statute were enacted later in time than the minimum ranges in the third-strike provision, the ranges in the F3 statute must prevail.

{¶ 69} Irrespective of the result, though, application of the general/specific canon of interpretation (and its later-in-time exception) do not truly address the conflict in this case. This is not the kind of case in which we must resolve a conflict

between two completely separate statutes that make no reference to each other and that prescribe conflicting penalties of independent force. The conflict that needs to be resolved is actually within the third-strike provision itself. The language of the third-strike provision at issue here is: "the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years," R.C. 2925.041(C)(1). The first part of this provision indicates that the general rule for third-degree felonies applies, and the second part states a number that cannot apply under the general rule for third-degree felonies. When an irreconcilable conflict of this nature "occurs with penal provisions, the result should favor the accused." Scalia & Garner at 190. In other words, the rule of lenity must apply.

### B. The rule of lenity and R.C. 2901.04(A)

{¶ 70} Contrary to the lead opinion's representation, when it comes to criminal statutes, the rule of lenity is not always the last kid picked in gym class. As the lead opinion notes, *see* lead opinion at ¶ 23, some leading authorities have advised that the rule of lenity can apply only "after all the legitimate tools of interpretation have been applied, 'a reasonable doubt persists.' " Scalia & Garner at 299, quoting *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). But those same authorities have also argued that many tools of interpretation are not appropriate in the context of criminal statutes. *See, e.g.*, *Moskal* at 132 (Scalia, J., dissenting) (inferences regarding legislative purpose should not be used to construe an ambiguous penal statute against a criminal defendant); *United States v. R.L.C.*, 503 U.S. 291, 307, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (Scalia, J., dissenting) (legislative history should not be used to construe an ambiguous penal statute against a criminal defendant). Further, the same authorities have argued that the rule of lenity is not limited to instances of " 'grievous ambiguity,' " Scalia & Garner at 299, quoting *Muscarello v. United*

*States*, 524 U.S. 125, 139, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Instead, they have argued, the breadth of the rule's use should be increased:

> On the whole, it might fairly be said that the rule of lenity is underused in modern judicial decision-making—perhaps the consequence of zeal to smite the wicked. The defendant has almost always done a bad thing, and the instinct to punish the wrongdoer is a strong one. But a fair system of laws requires precision in the definition of offenses and punishments. The less the courts insist on precision, the less the legislatures will take the trouble to provide it.

(Footnote omitted.) *Id.* at 301.

{¶ 71} I think the rule of lenity ought to apply to the interpretation of criminal statutes far more than it has been applied in recent years. Although criminal laws should not be "construed so strictly as to defeat the obvious intention of the legislature," we should first and foremost value the fact that the age-old rule of lenity "is founded on the tenderness of the law for the rights of individuals [as well as] the plain principle that the power of punishment is vested in the legislative, not in the judicial department." *United States v. Wiltberger*, 18 U.S. 76, 77, 95, 5 L.Ed. 37 (1820). And if we are to say with a straight face that ignorance of the law is no excuse, then we must insist that lack of clarity in the law is no excuse either. *See McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931) ("it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed").

{¶ 72} Further, even if the rule of lenity is considered a last resort by some conservative modern authorities on statutory interpretation, it cannot be considered a last resort in Ohio criminal law, because our General Assembly has specifically

instructed otherwise in R.C. 2901.04(A): "[S]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." The instruction in R.C. 2901.04(A) is a "specific" rule that prevails over other general rules of construction in R.C. Chapter 1 by the very terms of one of those rules. *See* R.C. 1.51 (general/specific canon).

{¶ 73} The lead opinion dismisses the General Assembly's own instruction on its intent by invoking judicially created canons of statutory interpretation and by citing cases suggesting that the rule of lenity should be applied only as a last resort after considering all other canons of interpretation. As a general notion, I disagree that there is a hierarchy of canons of interpretation that is as immutable as the lead opinion and its cited cases let on. Regardless, the alleged hierarchy of canons of interpretation does not trump the legislature's clear expression of its intent to us in R.C. 2901.04(A): "Dear judicial branch, if there is an ambiguity or conflict in these statutes, our intent was to take the more lenient course of action." That is as crystal clear as legislative intent can get. Canons of statutory interpretation are certainly not more authoritative than the statutes themselves and therefore cannot undo the explicit intent of the legislature.

{¶ 74} Accordingly, the rule of lenity is the appropriate canon of interpretation to use in attempting to resolve the conflicting language in the third-strike provision, R.C. 2925.041(C)(1).

## IV. Resolution of the conflict through the rule of lenity

{¶ 75} The nature of the conflict here is clear: the General Assembly made a mistake. Either it meant (but failed) to reduce the minimum prison term in the third-strike provision of R.C. 2925.041(C)(1) to match the new, lesser maximum prison term permitted by the 9-to-36-month range in the general F3 statute, R.C. 2929.14(A)(3)(b), or it meant (but failed) to either divorce the third-strike provision from the F3 statute or include it in the list of exceptions in the specific F3 provision. We should not fix the mistake for the General Assembly; it is not our place to step

into the shoes of the legislature to speak on its behalf. *See Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (the rule of lenity, rather than a judicial fix, must apply "when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will"). We must therefore strictly construe the third-strike provision in R.C. 2925.041(C)(1) until the General Assembly provides language that is capable of being harmonized within the criminal code.

{¶ 76} In order to strictly construe R.C. 2925.041(C)(1), we would not need to invalidate the third-strike provision in its entirety. When invalidation becomes necessary, a court " 'should refrain from invalidating more of the statute than is necessary.' " *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987), quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (plurality opinion). The portion of the third-strike provision that incorporates the F3 statute but raises the mandatory minimum sentence to the maximum sentence allowable by the F3 statute is just as valid now as it was before the F3 statute was amended. The only part of the third-strike provision that cannot currently be applied is the extent to which it exceeds the three-year maximum in the general sentencing range in R.C. 2929.14(A)(3)(b). Accordingly, to strictly construe the third-strike provision while preserving it to the extent that it can be applied, we need only reduce the number five to the number three.

{¶ 77} Because the rule of lenity allows for a reasonable resolution of the internal conflict within the language of the third-strike provision of R.C. 2925.041(C)(1) and its external conflict with the general and specific provisions of the F3 statute, the lead opinion's appeal to the absurd-result principle, embodied in R.C. 1.47(C), is unavailing. Although the terms of the F3 statute prevail over the terms of the third-strike provision, they do not render the third-strike provision completely inoperative. A defendant facing punishment pursuant to the third-strike provision of R.C. 2925.041(C)(1) would be sentenced to a mandatory prison term

of not less than three years and could not be sentenced to as little as nine months in prison as the lead opinion claims.

{¶ 78} Finally, it bears noting that the lead opinion's solution requires deletion of most of the relevant language in the third-strike provision of R.C. 2925.041(C)(1): "the court shall impose ~~as~~ a mandatory prison term ~~one of the prison terms prescribed for a felony of the third degree that is not less than~~ five years." My solution of changing the number five to the number three is far simpler. It also reflects the fairest possible reading of the applicable statutes and does the least violence to the language. Thus, in addition to providing a just and logical result, applying the rule of lenity to this particular conflict provides the simplest, most straightforward solution.

## V. Conclusion

{¶ 79} Although the lead opinion implies otherwise, its objective cannot be to allow the third-strike provision of R.C. 2925.041(C)(1) to independently apply as its own specific sentencing provision to the exclusion of the provisions of R.C. 2929.14(A)(3), the F3 statute. Quite the opposite; the justices joining the lead opinion know that the F3 statute must apply: the third-strike provision in R.C. 2925.041(C)(1) expressly requires as much. The problem is that the lead opinion is trying to insinuate the third-strike provision into the special, harsher sentencing range permitted in the later-enacted R.C. 2929.14(A)(3)(a) despite the fact that the plain language of R.C. 2929.14(A)(3)(a) does not allow the third-strike provision of R.C. 2925.041(C)(1) to be included.

{¶ 80} It is possible that the General Assembly's intent was exactly as the justices joining the lead opinion infer, and it is just as possible that its intent was otherwise. Regardless, we should not speculate to resolve this kind of conflict, especially in the context of penal statutes. Until the General Assembly makes its intent clear in the general and specific sentencing provisions of the F3 statute and the third-strike provision of R.C. 2925.041(C)(1), we should strictly construe the

third-strike provision so that its sentencing minimum does not exceed the maximum allowed by the general sentencing provision in R.C. 2929.14(A)(3)(b). The Fourth District Court of Appeals understood this quite well, and I would therefore affirm its judgment.

_____

David C. Kelley, Adams County Prosecuting Attorney, and Mark R. Weaver, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Allen Vender, Assistant Public Defender, for appellee.

_____