[Cite as *In re A.R.M.*, 2022-Ohio-954.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                              :

[A.R.M.],                                      :          No. 21AP-364
                                                        (Prob. No. 604420)

[S.M. and A.M.,                                :

          Petitioners-Appellants.]             :          (ACCELERATED CALENDAR)

---

D E C I S I O N

Rendered on March 24, 2022

---

**On brief:**  *A. Patrick Hamilton*, for appellants.
**Argued:**  *A. Patrick Hamilton*.

---

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

SADLER, J.

{¶ 1}  Petitioners-appellants, S.M. and A.M., appeal from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling their objections and adopting a magistrate's decision, and dismissing their petition for adoption.  For the following reasons, we reverse the judgment and remand for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On June 16, 2020, appellants, who reside in Ohio, filed a petition for adoption of A.R.M., an infant who was born in Texas on May 28, 2020.  The petition indicated A.R.M. was living in appellants' home, having been placed there for adoption on June 1, 2020, by consent to adoption of A.R.M.'s birth mother, R.Z.  The petition asserted that consent to the adoption from A.R.M.'s birth father was not required under R.C. 3107.07(B)(2)(c), i.e., because he had willfully abandoned R.Z. during her pregnancy and up to the time of placement in appellants' home.  The petition was accompanied by numerous supporting

documents. The supporting documents included affidavits from R.Z. averring she was represented by Texas attorneys, that she freely and voluntarily placed A.R.M. with appellants for purposes of adoption, and that she consented to the adoption. The petition was also accompanied by a copy of Interstate Compact on the Placement of Children ("ICPC") Form 100A, giving notice of intent to place A.R.M. for adoption in Ohio. The ICPC Form 100A was signed by Heather Spencer, Deputy Compact Administrator for the Ohio Department of Job and Family Services ("ODJFS"), indicating that the placement could be made.

{¶ 3} At a status hearing, a magistrate of the probate court sua sponte raised the issue of whether A.R.M. had been properly placed with appellants for adoption.[1] In response, appellants filed a memorandum in support of their petition for adoption, arguing the placement had been properly made under the ICPC and Ohio law. After appellants filed their memorandum, the magistrate conducted a second status conference; following that conference, appellants filed a supplemental memorandum in support of the petition.

{¶ 4} The probate court magistrate issued a decision recommending that the petition be dismissed. The magistrate found appellants failed to establish that A.R.M. had been placed in their home for purpose of adoption in compliance with Ohio law. The magistrate concluded that "ICPC administrative approval of a placement itself is simply not a legal placement for adoption purposes." (Apr. 13, 2021 Mag. Decision at 6.) The magistrate also concluded appellants failed to establish R.Z. could place A.R.M. for adoption by acting as his out-of-state custodian without appearing before the probate court and applying for approval of the placement.

{¶ 5} Appellants filed objections to the magistrate's decision, asserting they had complied with all legal requirements and that A.R.M. had been placed with them for adoption in compliance with law. The probate court issued a decision based on its review of the magistrate's factual findings and legal conclusions. The probate court overruled appellants' objections and adopted the magistrate's decision, concluding that although

---

[1] Appellants were the only parties to the proceedings in the probate court and on appeal; there are no intervening parties in this case. As appellants note, R.C. 3107.084(B) would allow R.Z. to seek withdrawal of her consent to the adoption prior to entry of an interlocutory order or final decree of adoption, but R.Z. has not sought to withdraw her consent. Moreover, we note there is nothing in the record to indicate ODJFS expressed any concerns before approving the placement.

ICPC authorities in Ohio approved the placement, A.R.M. was not placed with appellants in a manner authorized under Ohio law. Having concluded that the placement was not legally made, the court dismissed the petition without prejudice.

{¶ 6} Appellants timely appealed from the probate court's decision.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Appellants assign the following as trial court error:

[1.] The Trial Court erred as a matter of law by dismissing the Petition for Adoption after erroneously determining that a placement made pursuant to the Interstate Compact for the Placement of Children in accordance with R.C. 5103.23 is an "illegal placement" as defined in R.C. 3107.14.

[2.] The trial court erred as a matter of law by dismissing the Petition for Adoption as an "illegal placement" after the Court ruled that a mother is not the custodian of her own child as defined in R.C. 5103.16(D).

## III. STANDARD OF REVIEW

{¶ 8} Under Civ.R. 53, when ruling on objections to a magistrate's decision, a trial court must undertake an independent, de novo review of the matters objected to and decide whether the magistrate properly determined the factual issues and appropriately applied the law. *In re S.M.B.*, 10th Dist. No. 17AP-899, 2019-Ohio-3578, ¶ 7. The standard of review on appeal from a trial court judgment adopting a magistrate's decision "varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error." *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14. The probate court's decision in this case involved a matter of statutory interpretation. Statutory interpretation is a question of law that we review de novo. *TBF Fin. LLC v. Wilkerson*, 10th Dist. No. 18AP-974, 2019-Ohio-3493, ¶ 11.

## IV. LEGAL ANALYSIS

### A. Legal provisions governing placement of a child for adoption in Ohio

{¶ 9} Because A.R.M. was born in Texas and appellants reside in Ohio, placement of A.R.M. with appellants for adoption implicated the general Ohio law governing placement of a minor for adoption and the ICPC, which has been adopted into Ohio law.

We begin with a summary of the relevant legal provisions before considering the specifics of this appeal.

### 1. General law providing for placement of a child for adoption in Ohio

{¶ 10} Ohio law provides that "[n]o child shall be placed or received for adoption or with intent to adopt unless placement is made by a public children services agency, an institution or association that is certified by [ODJFS under R.C. 5103.03] to place children for adoption, or custodians in another state or foreign country, or unless [the criteria contained in R.C. 5103.16(D)(1) through (3)] are met."  R.C. 5103.16(D).  The Supreme Court of Ohio has described the process of placing a child for adoption under this statute:

> A prerequisite to adoption is the placement of the child with the prospective adoptive parents.  *See* R.C. 3107.051(A) (requiring filing of adoption petition within 90 days after the child is placed in the petitioner's home); R.C. 3107.11(A) (stating that adoption hearing may take place 30 days after the child is placed with the petitioner).  Generally, only a public children-services agency or a state-certified child-placement institution or association may place a child for adoption.  R.C. 5103.16(D).
>
> * * *
>
> However, R.C. 5103.16(D)(1) permits the parent or parents of a child to arrange a private adoption without going through an authorized agency by appearing personally and applying to the probate court for approval of a proposed adoptive placement.  Upon application, and if other statutory conditions are met, the probate court may approve the placement, R.C. 5103.16(D)(1) through (3), at which time, "the prospective adoptive parent with whom the child is placed has care, custody, and control of the child pending further order of the court," R.C. 5103.16(D).

*State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas*, 150 Ohio St.3d 230, 2016-Ohio-7382, ¶ 25-26.

{¶ 11} Strict compliance with the statutory requirements of R.C. 5103.16(D) is required.  *In re J.A.S.*, 126 Ohio St.3d 145, 2010-Ohio-3270 at ¶ 22; *see also Lemley v. Kaiser*, 6 Ohio St.3d 258 (1983), at paragraph one of the syllabus ("R.C. 5103.16, the procedure for independently placing a child for adoption, is in derogation of the common law and must be strictly construed.").

### 2. The Interstate Compact on Placement of Children

{¶ 12} In addition to the general provisions governing placement of a child for adoption, Ohio also has incorporated the ICPC into state law as R.C. 5103.23.

{¶ 13} The ICPC was first adopted by New York in 1960 and has been enacted by all fifty states and the District of Columbia. Am. Public Human Servs. Assn. & Natl. Council of Juvenile & Family Court Judges, *The Interstate Compact on the Placement of Children: A Manual and Instructional Guide for Juvenile and Family Court Judges* (2001) 10. Ohio first enacted the ICPC into state law in 1975, becoming effective on January 1, 1976. Am.H.B. No. 247, 111 Ohio Laws, Part II, 2071, 2072-78.

{¶ 14} Under the ICPC, an entity or individual that sends a child to another state for adoption is referred to as a "sending agency." R.C. 5103.23(II)(B). Because this case involved an independent, private adoption placement, R.Z. was the "sending agency" for A.R.M. *Id.* (defining "sending agency" to include "a person"); *see also* Ohio Adm.Code 5101:2-52-08(A) (referring to an "Ohio parent" as a possible "sending agent" for purposes of placing a child in another state); *In re Baby Girl*, 850 S.W.2d 64, 68 (Mo.1993) fn. 6 ("[T]he Compact's definition of the term 'sending agency' includes a 'person.' A natural parent then falls within the definition."). A sending agency must comply with the terms of the ICPC and the laws governing placement of children of the "receiving state" where the child is being placed. R.C. 5103.23(III)(A). The sending agency must provide specific information to the appropriate public authorities in the receiving state so that those authorities may evaluate the proposed placement. R.C. 5103.23(III)(B). A child may not be sent into the receiving state until the appropriate public authorities in the receiving state "notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." R.C. 5103.23(III)(D).

### 3. Oversight of independent, private interstate adoption placements in Ohio

{¶ 15} Ohio is " 'decentralized' for ICPC purposes, meaning that ICPC communications and activities (like home studies) are managed at a county level." Graski, *The Interstate Compact for the Placement of Children and the National Electronic Interstate Compact Enterprise*, Trends in State Courts (2016) 35; *see also* Ohio Department of Job and Family Services Office of Families and Children, *The Interstate Compact on the Placement of Children*, https://jfs.ohio.gov/ocf/icpc.stm (accessed Mar. 7, 2022) ("Ohio's ICPC functions are decentralized. Each Ohio county [public children

services agency] has an Assistant Deputy Compact Administrator (ADCA) who handles all ICPC matters involving their county public agency."). Each county public children services agency[2] director or their designee serves as the agency's assistant deputy compact administrator for carrying out ICPC responsibilities. Ohio Adm.Code 5101:2-52-04(A). The assistant deputy compact administrator must meet the qualifications of a child welfare caseworker. *Id.* The assistant deputy compact administrator's duties include ensuring all required documentation sent and received complies with ICPC regulations and reviewing the home study and information on a child to determine if placement appears to be safe and appropriate for the specific child. Ohio Adm.Code 5101:2-52-04(A)(3) through (4). Based on that review, the assistant deputy compact administrator is responsible for signing ICPC Form 100A indicating approval or denial of the information provided. Ohio Adm.Code 5101:2-52-04(A)(4).

{¶ 16} Notwithstanding this decentralized approach, ODJFS is designated by statute as the "appropriate public authorit[y]" to receive and act on notices required under Article III of the ICPC. R.C. 5103.232. Accordingly, before a child may be sent or brought into Ohio for adoption placement, ODJFS must be provided written notice of the intention to send or bring the child into Ohio. R.C. 5103.23(III)(B). Among the information required in that notice is "[a] full statement of the reasons for such proposed action and evidence of the authority pursuant to which the placement is proposed to be made." R.C. 103.23(III)(B)(4). In addition to the information required by statute, ODJFS may request "such supporting or additional information as it may deem necessary under the circumstances to carry out the purpose and policy of [the ICPC]." R.C. 5103.23(III)(C). A "child shall not be sent, brought, or caused to be sent or brought into [Ohio] until [ODJFS] shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." R.C. 5103.23(III)(D).

{¶ 17} The ODJFS Office of Families and Children's ICPC website indicates that all independent, private interstate adoption placements are reviewed by the ODJFS Ohio Interstate Office, under the supervision of Heather Spencer, the deputy compact

---

[2] A "public children services agency" is a county children services board, a county department of job and family services, or other designated private or government entity "that has assumed the powers and duties of the children services function prescribed by [R.C. Chapter 5153] for a county." R.C. 5153.01(A); Ohio Adm.Code 5101:2-1-01(B)(252).

administrator for ODJFS. Ohio Department of Job and Family Services, *List of County and State ICPC Contacts*, https://jfs.ohio.gov/ocf/OhioCountyndStateICPCcontacts.stm (accessed Mar. 7, 2022).

### 4. The probate court's application of R.C. 5103.16 and 5103.23 in this case

{¶ 18} In this case, the probate court held that R.C. 5103.16(D) provides the exclusive methods for placing a child for adoption in Ohio and that all valid adoption placements must be made through one of the methods set forth under that statute. Therefore, the probate court concluded, a birth parent seeking to make an independent, private adoption placement must apply to the appropriate probate court and receive approval for the placement, under the procedure set forth in R.C. 5103.16(D)(1) through (3).

{¶ 19} Regarding interstate adoption placements, the probate court concluded that while ICPC authorities must *consent* to a proposed interstate placement for adoption, they are not authorized under Ohio law to *make* the placement. The probate court held there were no exceptions contained in R.C. 5103.16(D) for an independent, private adoption placement by an out-of-state birth parent; thus, if such a placement is sought, the out-of-state birth parent must apply for and receive probate court approval under the procedure set forth in R.C. 5103.16(D)(1) through (3). Applying these conclusions to appellants' petition, the probate court found the placement was not made in compliance with law because R.Z. did not follow the probate court application and approval process.

{¶ 20} The probate court did not find that R.Z. failed to comply with the requirements of R.C. 5103.23. Rather, the probate court held that, notwithstanding compliance with R.C. 5103.23, R.Z. was *also* required to apply for and obtain probate court approval under R.C. 5103.16(D)(1) through (3) to make an independent, private interstate placement of A.R.M. in Ohio. Thus, this appeal presents the question of whether R.Z., as an out-of-state birth parent seeking to make an independent, private adoption placement in Ohio, was required to apply for and obtain probate court approval of the placement under R.C. 5103.16(D)(1) through (3) in addition to complying with R.C. 5103.23. Neither the probate court nor appellants have cited any Ohio decisions directly addressing this question and it appears to be a matter of first impression.

**B.      First assignment of error – whether the independent, private interstate placement of A.R.M. made pursuant to ICPC was in violation of Ohio law**

{¶ 21} In their first assignment of error, appellants argue the probate court erred by concluding the interstate placement of A.R.M. with them for adoption was made in violation of law despite being approved by the appropriate Ohio ICPC authorities. Appellants present two arguments in support of their first assignment of error.  First, appellants assert that placement of a child for an interstate adoption with consent of the appropriate ICPC authorities is authorized under R.C. 5103.16(A).  Second, appellants assert that an independent, private adoption placement by a birth parent that is approved by ICPC authorities is a placement made by a public children services agency for purposes of R.C. 5103.16(D).

**1.      Whether interstate placement of A.R.M. for adoption pursuant to the ICPC was authorized by R.C. 5103.16(A)**

{¶ 22} In support of their first assignment of error, appellants first argue the probate court erred by concluding that R.C. 5103.16(D) provides the exclusive methods of placing a child for adoption in Ohio.  Appellants argue R.C. 5103.16(A) also provides methods for making a placement for adoption, including by written consent of ICPC authorities. Appellants claim "R.C. 5103.16(A) permits private placement [for adoption] under specific safeguards."  (Appellants' Brief at 14.)  The probate court rejected this argument, holding R.C. 5103.16(D) "sets forth who is empowered to place minors into any kind of placement" and "nothing in the plain meaning of R.C. 5103.16(A) reveals any power of ICPC authorities or courts to *make* a placement."  (Emphasis sic.) (June 24, 2021 Jgmt. Entry at 4.)

{¶ 23} R.C. 5103.16(A) provides:

> Except as otherwise provided in this section, no child shall be placed or accepted for placement under any written or oral agreement or understanding that transfers or surrenders the legal rights, powers, or duties of the legal parent, parents, or guardian of the child into the temporary or permanent custody of any association or institution that is not certified by the department of job and family services under section 5103.03 of the Revised Code, without the written consent of the office in the department that oversees the interstate compact for placement of children established under section 5103.20 of the Revised Code or the interstate compact on the placement of children established under section 5103.23 of the Revised

Code, as applicable, or by a commitment of a juvenile court, or by a commitment of a probate court as provided in this section. A child may be placed temporarily without written consent or court commitment with persons related by blood or marriage or in a legally licensed boarding home.

{¶ 24} Appellants claim R.C. 5103.16(A) authorizes placement for adoption through ICPC placement, probate court placement, and juvenile court placement. In effect, appellants argue the multiple clauses contained in R.C. 5103.16(A) must be considered as distinct and independent. Appellants assert the first half of the first sentence of R.C. 5103.16(A) prohibits placement of a child into the custody of an uncertified association or institution. They further assert that the second half of that sentence (i.e., beginning with the phrase "without the written consent of") is "separated by a comma and is not part of the statute relating to 'associations and institutions.' " (Nov. 2, 2020 Memo. in Support of Petition for Adoption at 5.) Appellants argue this second part authorizes placement of a child for adoption by consent of ICPC authorities or by juvenile or probate court commitment.

{¶ 25} In effect, appellants argue the first sentence of R.C. 5103.16(A) should be read as two separate, independent sentences. However, we conclude that appellants' proposed interpretation of R.C. 5103.16(A) is inconsistent with the plain language of the statute and defies the principles of statutory construction and interpretation.

{¶ 26} "The primary goal of statutory interpretation is to determine and give effect to the General Assembly's intent in enacting the statute." *State v. Mullins*, 10th Dist. No. 16AP-236, 2016-Ohio-8347, ¶ 19. We begin by considering the statutory language in context, "construing the words and phrases according to rules of grammar and common usage." *Id.* If the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, we need not resort to other rules of statutory interpretation. *Id.*

{¶ 27} When construing a statute, we presume that in enacting the statute the General Assembly intended the entire statute to be effective. R.C. 1.47(B). We must "evaluate a statute 'as a whole and giv[e] such interpretation as will give effect to every word and clause in it.' " *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 21, quoting *State ex rel. Myers v. Bd. of Edn. of Rural School Dist. of Spencer Twp.*, 95 Ohio St. 367, 373 (1917). If the legislative intent of a statute is clearly expressed, " 'the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged;

significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act.' " *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St.3d 231 (1948), paragraph five of the syllabus.

{¶ 28} The plain language of R.C. 5103.16(A) establishes that it is a limitation on placing a child into temporary or permanent custody of an uncertified association or institution. Under the statute, one circumstance when such a placement may be made is by written consent of appropriate ICPC authorities. Nothing in R.C. 5103.16(A) relates to placement of a child for adoption. Accordingly, the probate court did not err by concluding that R.C. 5103.16(A) did not authorize ICPC authorities to make a placement of a child for adoption.

> **2.   Whether independent, private interstate placement of A.R.M. for adoption pursuant to the ICPC was a placement made by a public children services agency for purposes of R.C. 5103.16(D)**

{¶ 29} Appellants next argue that the independent, private adoption placement of A.R.M. from Texas into Ohio in compliance with the ICPC was authorized under R.C. 5103.16(D) as a placement "made by a public children services agency."

{¶ 30} The probate court concluded that R.C. 5103.16(D) provides the exclusive methods for placing a child for adoption under Ohio law. Under R.C. 5103.16(D), a birth parent may only make a private, independent adoption placement by complying with the probate court application and approval process set forth in R.C. 5103.16(D)(1) through (3). As explained above, the General Assembly also has incorporated the ICPC as part of state law in R.C. 5103.23. However, because R.C. 5103.16(D) does not expressly address independent, private interstate adoption placements performed in compliance with R.C. 5103.23, there is a potential ambiguity or conflict when, as in this case, a non-resident birth parent pursues an independent, private adoption placement in Ohio.

{¶ 31} " 'It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law.' " *State v. Pribble*, 158 Ohio St.3d 490, 2019-Ohio-4808, ¶ 12, quoting *State v. Moaning*, 76 Ohio St.3d 126, 128 (1996). Because R.C. 5103.16(D) and 5103.23 both relate to the placement of children for adoption, they must be read in pari materia. *See Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35 (1991) ("[S]tatutes which relate to the

same general subject matter must be read *in pari materia*."); *see also In re Adoption of Hockman*, 11th Dist. No. 2004-P-0079, 2005-Ohio-140, ¶ 13-14 (construing R.C. 3107.084(B), governing withdrawal of consent to adoption, and R.C. 3107.16(B), governing the time for questioning the validity of an adoption, in pari materia). When reading statutes in pari materia and construing them together, we "must give such a reasonable construction as to give the proper force and effect to each and all such statutes." *Johnson's Markets* at 35. "The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections." *Id.* When determining legislative intent in enacting a statute, it is presumed that "[a] just and reasonable result is intended" and "[a] result feasible of execution is intended." R.C. 1.47(C) through (D). Similarly, when construing an ambiguous statute, we may consider the object sought to be attained by the statute, the legislative history, and the consequences of a particular construction. R.C. 1.49. Moreover, although "adoption statutes are in derogation of common law and therefore must be strictly construed, strict construction does not require that we interpret statutes in such a manner that would mandate an unjust or unreasonable result." (Internal citation omitted.) *In re Zschach*, 75 Ohio St.3d 648, 655 (1996). With those principles in mind, we consider how to harmonize R.C. 5103.16(D) and 5103.23.

### a.      Legislative intent of R.C. 5103.16(D)

{¶ 32} The substance of what is now R.C. 5103.16(D) predates the incorporation of the ICPC into Ohio law, having been enacted as part of R.C. 5103.16 in 1961. *See* Am.H.B. No. 966, 129 Ohio Laws 1776, 1776-77. As of January 1, 1976, when the ICPC became part of Ohio law, the relevant portion of R.C. 5103.16 setting forth the methods of placement for adoption provided as follows:

> No child shall be placed or received for adoption or with intent to adopt, except through a placement made by a county welfare department having a child welfare division, county children services board, the department of public welfare, an organization authorized to place children for adoption under a certificate of the department of public welfare, or custodians in a foreign state or country * * * unless prior to the placement and receiving of the child the parent or parents of the child have personally applied to, and appeared before, the probate court of the county in which the parent or parents reside, or in which the person or persons seeking to adopt the child reside, for approval of the proposed placement specified in the

> application, and unless the court, after an independent investigation of the proposed placement, has determined that it is in the best interests of the child, and has approved of the proposed placement.

Am.Sub.S.B. No. 145, 136 Ohio Laws 326, 395.

{¶ 33} The probate court application and approval process requires a birth parent seeking to make an independent, private adoption placement to personally apply to and appear before the probate court in the county where the birth parent resides or where the person seeking to adopt the child resides. R.C. 5103.16(D)(1). The birth parent must sign and file with the court "a written statement showing that the parent or parents are aware of their right to contest the decree of adoption subject to the limitations of [R.C. 3107.16]." R.C. 5103.16(D)(1). The probate court must then order an independent home study of the proposed placement and, after completion of the home study, determine whether the proposed placement is in the best interest of the child. R.C. 5103.16(D)(2). Before the placement can be made, the probate court must approve the proposed placement. R.C. 5103.16(D)(3).

{¶ 34} "R.C. 5103.16 was enacted to curb black-market adoptions by requiring some agency supervision or court approval of private placements." *In re J.A.S.* at ¶ 13. The General Assembly's intent " 'was to provide some measure of judicial control over the placement of children for adoption which is not conducted under the auspices of a statutorily recognized and authorized agency * * * by having the parents of the child personally appear before the proper probate court for approval of the placement and adoption.' " *Id.*, quoting *Lemley* at 260.

### b.    Legislative intent of R.C. 5103.23

{¶ 35} The ICPC, incorporated into Ohio law as R.C. 5103.23, is intended to facilitate interstate adoption placements. R.C. 5103.23(I)(A) (stating that the purpose and policy of the party states to the ICPC is to cooperate in interstate placement of children to the end that "[e]ach child requiring placement shall receive the *maximum opportunity to be placed* in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care" (Emphasis added); *see also In re R.S.*, 235 A.3d 914, 926 (Md.App.2020), quoting *In re Adoption/Guardianship No. 3598*, 701 A.2d 110, 119 (Md.App.1997) ("[T]he purpose of the

ICPC is to facilitate interstate adoption and maximize the number of 'acceptable homes for children in need of placement.' "); *In re J.L.J.*, 4 N.E.3d 1189, 1198-99 (Ind.App.2014) ("The ICPC facilitates the interstate placement of children and resolves jurisdictional issues.").  It is also intended to ensure that "[t]he appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child."  R.C. 5103.23(I)(B).

### c. Harmonizing R.C. 5103.16(D) and R.C. 5103.23 in the context of the independent, private interstate placement of A.R.M. for adoption in Ohio

{¶ 36} Under R.C. 5103.16(D), a placement for adoption may be "made by a public children services agency."  To "make" can be defined as "to cause to exist, occur or appear; to bring to pass."  *Webster's Third New International Dictionary* 1363 (1966).

{¶ 37} As explained above, in Ohio's decentralized system, each county public children services agency has an assistant deputy compact administrator charged with performing ICPC responsibilities.  However, it appears that independent, private interstate adoption placements, such as the placement in this case, are subject to review and approval by the ODJFS Ohio Interstate Office.  *See* Ohio Department of Job and Family Services, *List of County and State ICPC Contacts*, https://jfs.ohio.gov/ocf/ OhioCountyndStateICPCcontacts.stm (accessed Mar. 7, 2022) (indicating that "[a]ll private/independent adoptions" are handled by the ODJFS Ohio Interstate Office). Notations on the ICPC Form 100A submitted to ODJFS to request placement of A.R.M. with appellants indicate supporting documentation was provided, including a home study for appellants.  The home study, which is included in the probate court record, was completed by an assessor for Adoption by Gentle Care[3]; it contains detailed information about appellants, including their personal and family history, finances, understanding of the adoption process, and parenting skills and abilities.

{¶ 38} The Form 100A was signed by ODJFS's Deputy Compact Administrator indicating "[p]lacement may be made" with appellants in Ohio.  In reviewing and approving the placement, ODJFS and its Deputy Compact Administrator performed functions

---

[3] The probate court record also includes proof that Adoption by Gentle Care was licensed by ODJFS to accept temporary, permanent, or legal custody of children and to place children for foster care or adoption.

analogous to those performed by a public children services agency under Ohio Adm.Code 5101:2-52-04. The placement could not occur without approval from ODJFS; therefore, ODJFS's approval was a necessary component to bring the placement to pass — i.e., to make the placement. Accordingly, on these facts, we conclude the placement of A.R.M. with appellants in Ohio, performed in compliance with the requirements of R.C. 5103.23, complied with Ohio law because it was effectively a placement made by a public children services agency for purposes of R.C. 5103.16(D).[4]

{¶ 39} Finding that the placement in this case complied with Ohio law is consistent with the intent and purpose of R.C. 5103.16(D) and 5103.23. The probate court's decision would require R.Z. to comply with the requirements of R.C. 5103.23 *and* the probate court application and approval process under R.C. 5103.16(D)(1) through (3) to make an independent, private adoption placement of A.R.M. with appellants in Ohio. As explained above, the probate court application and approval process is intended to provide oversight for independent, private adoption placements, and requires the probate court to review a home study and determine whether the proposed placement is in the child's best interest. In the present case, that oversight function was accomplished through compliance with R.C. 5103.23 and approval of the placement from ODJFS's deputy compact administrator after reviewing a home study of the proposed placement.

{¶ 40} Because the placement of A.R.M. complied with Ohio law, the probate court erred by concluding A.R.M. had been placed in appellants' home in violation of law and dismissing the petition under R.C. 3107.14(D).

{¶ 41} Accordingly, we sustain appellants' first assignment of error.

**C.      Second assignment of error – whether R.Z. placed A.R.M. in Ohio acting as his out-of-state custodian for purposes of R.C. 5103.16(D)**

{¶ 42} In their second assignment of error, appellants assert the probate court erred by dismissing their petition for adoption because R.Z. made the placement acting as the

---

[4] Harmonizing R.C. 5103.16(D) and R.C. 5103.23 to find that the placement in this case was effectively made by a public children services agency is analogous to the "functional equivalency" test employed by Ohio courts when determining whether a private entity is subject to the Ohio Public Records Act. *See State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, ¶ 15, fn. 3; *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, ¶ 21-26 (same). That test is a multi-factor analysis, including whether the private entity "performs a governmental function." *State ex rel. Oriana House* at ¶ 25. Similarly, in this case, ODJFS performed functions analogous to those performed by a public children services agency.

out-of-state custodian of A.R.M. under R.C. 5103.16(D) and therefore was not required to comply with the probate court application and approval process under R.C. 5103.16(D)(1) through (3).  Having concluded that the probate court erred by dismissing the petition because the placement was effectively made by a public children services agency under R.C. 5103.16(D), appellants' second assignment of error is rendered moot.

{¶ 43} Accordingly, we dismiss as moot appellants' second assignment of error.

## V.     CONCLUSION

{¶ 44} For the foregoing reasons, we sustain appellants' first assignment of error and dismiss as moot appellants' second assignment of error.  We reverse the judgment of the Franklin County Court of Common Pleas, Probate Division, and remand the matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

LUPER SCHUSTER, P.J., and BEATTY BLUNT, J., concur.

_____